IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CEDRIC D. REDMOND, individually and behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 20-cv-6809 |
| v. ) ) | Hon. Beth Jantz |
| FQSR LLC d/b/a KBP FOODS, ) ) | |
| Defendant. ) | |

**PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*

*Attorneys for Plaintiff and
Others Similarly Situated*

**I.      Introduction**

Plaintiff Cedric Redmond filed this putative class action against Defendant FQSR LLC dba KBP Foods for unlawfully collecting, using, storing, and his biometric data (*i.e.* fingerprints) in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. The Parties reached a $3,452,300 class settlement for the 3,002 Settlement Class Members. The settlement is fair, reasonable, adequate, and meets all requirements under Rule 23. The Court should grant preliminary approval and enter the proposed order.

**II.     Procedural History**

On October 8, 2020, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Illinois alleging that Defendant violated BIPA by requiring him and other employees to use a biometric timekeeping system as part of their jobs. (Dkt. No. 1-1). In particular, Plaintiff alleged that Defendant violated BIPA by failing to do four things:

1) Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;

2) Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information was being collected, stored, and used, as required by BIPA;

3) Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA; nor

4) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

On November 17, 2020, Defendant removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 1. In early 2023, the Parties began discussing settlement and ultimately came to exchange information to facilitate a resolution of this case.

**III.     Summary of Settlement Terms (Ex. 1, Settlement Agreement)**[1]

    **A.     The Proposed Settlement Class (Ex. 1, Settlement Agreement, ¶ 1.24)**

The proposed Settlement Class includes a total of 3,002 identified individuals who worked for Defendant during the class period and who used hand scan and/or finger scan timeclocks in conjunction with their employment. The Class Representative seeks preliminary approval of a Settlement Class consisting of the following:

> All individuals who used Defendant's timekeeping technology which utilized a scan of individuals' hands and/or fingers or anything that allegedly could be covered as biometric identifiers or biometric information under the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 et seq., in the State of Illinois during the Class Period, who do not timely exclude themselves from the Settlement, are one of the individuals who appear on the Class List, and who did not agree to an arbitration agreement with Defendant.

    **B.     Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, ¶ 1.26)**

While denying all liability and wrongdoing, Defendant has agreed to pay a Gross Settlement Fund of $3,452,300 ($1,150 per person based upon an estimated total Class Size of 3,002) to resolve the claims in this case on a class action basis. The "Net Fund" is the Gross Settlement Fund minus the following deductions, approved Class Counsel fees and litigation costs; the Settlement Administrator's costs; and the Class Representative's Incentive Award. The Net Fund shall be distributed pro rata to Class Members.

After all deductions are made (if approved by the Court), Class Members are estimated to receive a check in the net amount of approximately $750. Unless they exclude themselves, all Class Members will automatically be sent a settlement check.

---

[1] Citations to the Settlement Agreement are in the headings of this Memorandum to avoid unnecessary multiplication of in-text citations. Capitalized terms not defined herein shall have the meaning set forth in the Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), which is Exhibit 1.

Class Members are not required to submit a claim to receive payment because many people will never go through that process. Instead, the process is streamlined to ensure maximum Class Members participation by having a check mailed to their last known address. Class members will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be returned to the Defendant.

C.  **Release of Claims (Ex. 1, Settlement Agreement, ¶ 3)**

Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from all claims relating to Plaintiff's or the Class Members' biometric information while employed with Defendant, including by way of example, any claims arising out of or relating to Defendant's storage, collection, capture, purchase, sale, disclosure, or other handling of biometric identifiers or biometric information. The named Plaintiff agreed to a broader release.

D.  **Settlement Administration (Ex. 1, Settlement Agreement, ¶ 1.23)**

The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator. The Settlement Administrator's costs are estimated to be $19,941.

E.  **Notice of Class Action Settlement (Ex. 1, Settlement Agreement, Ex A)**

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how the payment is made, exclusion, or how to submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Incentive Award; and (6) the Final Approval Hearing details.

### F. Distribution of Notice (Ex. 1, Settlement Agreement, ¶ 4.1b)

First, the Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address ("NCOS") database.

### G. Incentive Award (Ex. 1, Settlement Agreement, ¶ 8.3)

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representative an Incentive Award for his work in prosecuting this lawsuit on behalf of the Settlement Class. Class Counsel will file the request for the Incentive Award with their motion for attorney fees and costs, described below.

### H. Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, ¶ 8.1)

Under the Settlement Agreement, Class Counsel may request that the Court award them up to 35% of the Gross Settlement Fund as attorney fees plus their litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs in advance of the Fairness Hearing.

## IV. The Court Should Grant Preliminary Approval

### A. Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;
(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

  (3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

  "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

  Rule 23 was amended effective December 1, 2018. Before then, Rule 23 did not address standards for preliminary approval. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 28 (E.D.N.Y. 2019). At the preliminary approval stage, district courts decided whether the proposed settlement fell "within the range of possible approval." *Kou Thao Vang v. KeyTronicEMS*, 2019 WL 337589, at *1 (D. Minn. Jan. 28, 2019); "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card.,* 330 F.R.D. at 28 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

5

By way of comparison, settlements in other statutory privacy class actions frequently don't come near this amount, either in terms of raw numbers or percentage of available relief. *See e.g., In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages were available per claim); *Marshall v. Lifetime Fitness, Inc.*, 2017 CH 14262 (Cir. Ct. Cook Cnty.) (paying a cap of $270 to individuals who filed claims and reverting the remainder to defendant); *Adkins v. Facebook, Inc.,* 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs); *Carroll v. Crème de la Crème, Inc.,* 2017 CH 01624 (Cir. Ct. Cook Cnty. June 25, 2018) (BIPA settlement providing only credit monitoring); *Rosenbach v. Six Flags Ent. Corp.*, 2016 CH 00013 (Cir. Ct. Lake Cnty. May 14, 2021) (preliminarily approving $36 million fund for approximately 1,110,000 class members, and capping class member payments at $200 or $60 depending on date of finger scan); *Prelipceanu v. Jumio Corp.*, 2018 CH 15883 (Cir. Ct. Cook Cnty. July 21, 2020) ($7 million fund for approximately 260,000 class members); *Miracle-Pond v. Shutterfly*, 2019 CH 07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ($6.75 million fund for potentially millions of class members); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90 (N.D. Ill. Mar. 8, 2021) ($4.1 million fund for 62,000 class members, and assignment of insurance policy); *Figueroa v. Kronos*, 2019-CV-01306 (N.D. Ill. Feb. 10, 2020) ($15.2 million for 171,643 class members); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.)(BIPA settlement of $400 per person); *Zepeda v. Kimpton Hotel & Restaurant Group*, LLC, 2018 CH 2140 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc*. 2015-CH-16694 (Cir. Ct. Cook

Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co,* 2018-CH-01496 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) (per member BIPA allocation of between $768 and $1,085); *Jones v. CBC Restaurants Corp, dba Corner Bakery*, 19-cv-6736 (N.D. Ill 2020)(per member BIPA allocation of $800 per person).

### B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Class Counsel and the Class Representative pursued this case on behalf of a potential class. As a result of Class Counsel's and the Class Representative's sustained effort, the Parties reached a Settlement that makes meaningful monetary relief available to Class Members, with an appropriately tailored release of claims.

#### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation.

#### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

As explained above, this Settlement here exceeds other approved BIPA class settlements. The Settlement also represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Incagi. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement of 12.2% of damages, citing a study by Columbia University Law School determining that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (cites omitted).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

7

a. **Costs, risks, and delay of trial and appeal**

If the litigation had continued, it would have been complex, expensive, and protracted. Appeals that were pending at the time of negotiations were also considered. While Plaintiff was confident in the claims, an adverse ruling as to the issues would greatly limit or even gut this case, and there is a benefit to having a settlement now, rather than years from now.

b. **Effectiveness of the proposed method of distributing relief to Class Members**

The Settlement Administrator will send Notice via direct mail Ex. 1, Settlement Agreement, ¶ 4.1(b). This is a comprehensive notice program that rivals those implemented in similar settlements. Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Class Members will be mailed a check so long as they do not elect to exclude themselves from the settlement. The Settlement Administrator will distribute funds to Class Members via check to their last known mailing address.

c. **The terms of the proposed attorney fee award, including timing of payment**

Settlement Class Counsel will seek an award of attorney fees of up to 35% of the Gross Settlement Fund plus litigation costs. Ex. 1, Settlement Agreement ¶ 8.1. The requested fee is equal to or below the fees awarded in similar BIPA class settlements. And the Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Ex. 1, Settlement Agreement ¶ 8.2-3.

d. **Any Agreement required to be identified under Rule 23(e)(3)**

The Settlement Agreement is Exhibit 1 to this Motion. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

4. **The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)**

The Settlement treats Class Members equally by distributing awards from the Net

8

Settlement Fund on a *pro rata* basis. Ex. 1, Settlement Agreement, ¶ 1.27. All employees who fall under the class definition will be sent a check to their last known address for their pro rata share of the net amount.

    **C.**    **The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)**

        **1.**    **Certification Will Be Appropriate Under Rule 23(a)**

To obtain class certification, Plaintiff must demonstrate that his claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

        **a.**    **Numerosity**

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 3,002, Ex. 1, Settlement Agreement, ¶ 30, which satisfies numerosity.

        **b.**    **Commonality**

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Class Members. Thus, commonality will be met here.

        **c.**    **Typicality**

9

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted).

The claims of the Settlement Class Representative and Settlement Class Members arise from the same conduct: Defendant's alleged use of a biometric timekeeping system for its Illinois individuals. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that he is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

#### i. The Class Representative has an interest in the litigation and has no conflict with Class Members

The Class Representative alleges the same claims as Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017).

#### ii. Class Counsel is experienced and qualified

Settlement Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Ex. 2, Fish Declaration. In this case, Class Counsel demonstrated commitment to the Class by completing complex briefing and analysis along with written discovery.

### 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

#### a. Common questions predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the Defendant for which the law provides a remedy? The common question

11

predominating in this case is whether Defendant collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### b.     A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . .in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits.

### D.    Plaintiff's Notice Program and Class Notice Form Merit Approval (Ex. 1, Settlement Agreement, ¶ 61 and Exhibit A)

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

The plan for the Settlement Administrator to distribute Notices directly to Settlement Class Members by U.S. mail is reasonable.

## V. Conclusion

Because the Settlement is fair and provides significant monetary relief to the Settlement Class, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order, which will be submitted to the Court via its proposed order email address.

Dated: June 21, 2023

Respectfully submitted,

/s/ David Fish
One of Plaintiff's Attorneys

David Fish (dfish@fishlawfirm.com)
Mara Baltabols (mara@fishlawfirm.com)
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*Attorneys for Plaintiff and Others Similarly Situated*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on June 21, 2023, which will serve a copy on all counsel of record.

/s/     Mara Baltabols