**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CEDRIC D. REDMOND, individually and behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 20-cv-6809 |
| v. | ) ) | Hon. Keri Holleb Hotaling |
| FQSR LLC d/b/a KBP FOODS, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S CORRECTED COMBINED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Cedric Redmond ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel hereby moves for judgment and final approval of the class action Settlement Agreement and Release ("Settlement Agreement"), attached to this motion as <u>Exhibit 1</u>, reached with Defendant FQSR LLC dba KBP Foods ("Defendant") (collectively the "Parties") through arms-length negotiations. As detailed below, notice was robust with no requests for exclusion and no objections received. For a class of this size (nearly 3,000 members), the lack of objections or exclusions shows resounding support by Class Members. Class Members whose addresses could be validated will each receive a substantial direct cash benefit. This Settlement is pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or "the Act").

## I.      INTRODUCTION

As more fully described herein and in Plaintiff's Fee Motion (dkt. no. 66), the Parties have reached a class settlement for the 2,980[1] Class Members—representing gross settlement funding

---

[1] The final class size reduced slightly following preliminary approval from the original estimate based upon duplicates in the Class list. *See* Ex. 2, ¶¶ 8-9. The gross Settlement Fund remains the same, thereby increasing the gross pro rata amount slightly from $1,150 to $1,158.48 per person. *See* Ex. 1, ¶ 1.26.

of approximately $1,158 per person. This is a strong result for the Class as a whole and the Settlement is structured to maximize the number of Class Members who will receive a Settlement payment: each Class Member whose address could be validated will automatically be sent a payment unless they opt out. There is no requirement that they submit a claim form to receive a *pro rata* cash payment.

On July 11, 2023, Magistrate Jantz granted Preliminary Approval and found that "the Settlement Agreement is fair, reasonable, and adequate, is likely to be approved under Federal Rule of Civil Procedure 23(e)(2) and is in the best interests of the Settlement Class" and set a Final Approval Hearing to rule on any objections. Dkt. No. #62 ¶ 7. Following the preliminary approval of the Parties' Settlement, the administration proceeded on schedule. In accordance with the Court-approved plan described in the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") and as ordered by this Court, direct individual notice of the Settlement was mailed to putative Settlement Class Members. *See* Exhibit 2, Barazesh Decl. at ¶ 9. As detailed in the Motion for Preliminary Approval (dkt. no. 58), all Class Members who did not exclude themselves from the Settlement will receive a payment if their address could be validated. At the conclusion of the deadline, there were zero requests for exclusion, and zero objections. *Id.*, at ¶¶ 12, 13.

Plaintiff respectfully submits that the complete absence of objections and exclusions speaks to the fairness, reasonableness, and adequacy of the Settlement, the effectiveness of the Notice, as well as the ease of the administration plan. The overwhelmingly positive reaction from Class Members also underscores the value the Class Members place on the terms of the Settlement agreed to by the Parties. This is a fair and reasonable result, particularly in view of the significant known and unknown risks and anticipated delays involved in litigating the merits of BIPA claims

2

and inherent in pursuing these claims individually for a large percentage of Class Members.

For the reasons set forth below, both the form and substance of this Settlement satisfy the standards for final approval, and it should therefore be approved.

## II. PROCEDURAL HISTORY

On October 8, 2020, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Chancery Division, alleging that Defendant violated BIPA by requiring him and other employees to use a biometric timekeeping system as part of their jobs. (Dkt. No. 1-1). In particular, Plaintiff alleged that Defendant violated BIPA by failing to do four things:

> 1. Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;
>
> 2. Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information was being collected, stored, and used, as required by BIPA;
>
> 3. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA; nor
>
> 4. Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

On November 17, 2020, Defendant removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 1. In early 2023, after a lengthy stay to await the outcome of related legal issues before the Illinois Supreme Court, the Parties began discussing settlement and ultimately came to exchange information to facilitate a resolution of this case. On June 2, 2023, the Parties informed the Court that they had reached a class-wide settlement. Dkt. No. 57. Following the discussions, the Parties were able to come to a mutually agreeable resolution of their claims.

On July 11, 2023, the Court entered a Preliminary Approval Order for the Settlement. Dkt No. 62. The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement to affected class members; and

3. A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The first two steps in this process have occurred. With this Motion, Plaintiff respectfully requests that the Court take the third and final step in the process by granting final approval of the Settlement.

## III.    SUMMARY OF PROPOSED SETTLEMENT TERMS

### A.  The Settlement Class

The proposed Settlement Class includes a total of 2,980 identified individuals who worked for Defendant during the class period and who used hand scan and/or finger scan timeclocks in conjunction with their employment. The Class Representative seeks final approval of a Settlement Class consisting of the following:

All individuals who used Defendant's timekeeping technology which utilized a scan of individuals' hands and/or fingers or anything that allegedly could be covered as biometric identifiers or biometric information under the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 et seq., in the State of Illinois during the Class Period, who do not timely exclude themselves from the Settlement, are one of the individuals who appear on the Class List, and who did not agree to an arbitration agreement with Defendant. Ex. 1, ¶ 1.24.

4

### B. Administration and Notice

As described in the Motion for Preliminary Approval (dkt. no. 58), the administration and notice procedure were designed to provide putative class members with direct written notice of the Settlement. Consistent with draft notices submitted to the Court at the time of preliminary approval, the detailed Notice outlined the Settlement terms and provided information clearly informing Class Members of their options and how to opt out, object, or obtain additional information from the Administrator and/or directly from Class Counsel. *See* Exhibit 2. The Notice identified the amounts that could be paid out of the Gross Settlement Fund (Incentive Award, attorneys' fees, litigation costs, Administration Expenses) and estimated net check amount.

In compliance with the Settlement Agreement and consistent with the Order Granting Preliminary Approval ("Preliminary Approval Order"), Defendant timely provided the Settlement Administrator with a list of all the individuals identified as Class Members ("Class List") along with all known contact information. *Id.* at ¶ 4. The Administrator cross-referenced the names and addresses with the U.S. Postal Service's ("USPS") National Change of Address Database and, through this method, updated any outdated addresses. *Id*. ¶ 7, 8.

On August 4, 2023, the Administrator mailed the Class Notice. *Id*. ¶ 9. After the initial mailing, USPS returned 803 Notices. *Id*. ¶ 11. Through additional searches, the Administrator was able to locate 297 updated addresses, with 506 remaining undeliverable. *Id*. ¶ 11. By the conclusion of the notice period, the Administrator received no requests for exclusion and no objections to the Settlement. *Id*. ¶¶ 12, 13. In total, 2,474 individuals, who constitute 83% of the potential Class Members, received notice via mail. *Id*. ¶ 11.

### C. Class Release

Class Members who do not exclude themselves will release the Releasees, as defined in

the Settlement Agreement, from all claims relating to Plaintiff's or the Class Members' biometric information while employed at Defendant, including by way of example, any claims arising out of or relating to Defendant's storage, collection, capture, purchase, sale, disclosure, or other handling of biometric identifiers or biometric information. Ex. 1, ¶ 3.

### D.  Monetary Relief for Class Members

While denying all liability and wrongdoing, Defendant has agreed to pay a substantial Gross Settlement Fund as described in Exhibit 1, paragraph 1.26, to resolve the claims in this case on a class-wide basis. The Gross Settlement Fund is the maximum amount that the Defendant shall be obligated to pay under the Settlement and is allotted solely for that portion of the 2,980 individuals identified in the Defendant's Class List whose addresses could be validated. Only those individuals shall be bound by the Settlement Agreement. The "Net Settlement Fund" is the Gross Settlement Fund minus the following deductions, once approved by the Court: Settlement Class Counsel's attorney fees and litigation costs; the Settlement Administrator's Expenses; and the Settlement Class Representative's Incentive Award. Unless they exclude themselves, Settlement Class members will be paid pro rata via direct checks from the Net Settlement Fund.

Under the terms of the Settlement, Settlement Class Members will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be returned to the Defendant.

### E.  Class Representative Incentive Award

As described in the Fee Motion, in exchange for his service on behalf of the Class Members, the Settlement Agreement provides for an Incentive Award of $5,000 to be paid to Cedric Redmond for his work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, and recovering money for the Settlement

Class. Mr. Redmond provided information as requested by his counsel before and throughout the litigation, was constantly available, and assisted Plaintiff's counsel whenever called upon. Mr. Redmond took substantial direct and indirect risk by bringing the action in his name and agreeing to participate fully. The time, risk, and effort Mr. Redmond put into the case should be recognized and encouraged through the Incentive Award.

### F. Attorneys' Fees and Costs

Consistent with the Fee Motion, Class Counsel requests one-third of the Settlement Fund plus costs, including $3,700.97 for reimbursement of out-of-pocket litigation expenses. *See* <u>Exhibit 3,</u> Baltabols Dec. As more fully explained in the Fee Motion, courts in this District have regularly awarded 33-40% of the gross fund as attorneys' fees in common fund class action settlements. Class Counsel also requests $19,941 in Settlement Administration costs. <u>Exhibit 2,</u> ¶ 14.

One-third is appropriate for contingent fee awards in the Northern District of Illinois. *See Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") *citing Gaskill v. Gordan,* 160 F.3d at 361, 362 (7th Cir. 1998); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered)*; In re Diary Famers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual range of contingent fees is between 33 and 50 percent); *McDaniel,* 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%.") *see also* 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15.83 (5th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund").

A review of other BIPA class settlements demonstrates that a number of similar matters have awarded one-third of the common fund to class counsel as attorneys' fees. *See* <u>Exhibit 4.</u> The

requested percentage fee award of one-third (33.33%) is well in line with common fund fee awards in BIPA cases in this District (*see* Exhibit 4, Chart 1 [listing 33.3% fee awards in BIPA cases in the Northern District]) and is in fact below the percentage that is often awarded in BIPA cases (*see id.*, Chart 2 [listing 35% fee awards], yet even less than the percentage awarded in many cases, where warranted by the work expended and notable risk of loss. Chart 3 [listing 40% fee awards]). Class Counsel's request is reasonable and should be approved. Plaintiff's requested Service Award of $5,000 is similarly reasonable. Plaintiff's requested award reflects his exposure and participation throughout this case, including in the investigation of the action. It is similar to amounts awarded in several comparable BIPA cases in this District. (*See id.*, Chart 4 [listing incentive awards ranging from $5,000 to $10,000 in BIPA cases]).

## IV.    FINAL APPROVAL IS WARRANTED

Federal courts strongly favor and encourage settlements, particularly where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that the "claims, issues, or defenses of a certified class...may be settled...only with the court's approval...after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the settlement treats class members equitably relative to

each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g., Snyder v. Ocwen Loan Servicing*, No. 14 CV 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

In deciding whether a settlement is fair, reasonable, and adequate, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the Defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Wong v. Accretive Health*, 773 F.3d 859, 863 (7th Cir. 2014) (the "*Wong* factors"); *accord Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g., In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019). Applying these factors, the Court should find that the Settlement is fair, reasonable, adequate, and should be approved.

## A. Rule 23(e)(2) Factors Favor Final Approval.

### a. The Class Representative and Class Counsel Have Adequately Represented the Class

To establish that class counsel and the class representative have adequately represented the class, courts consider their performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is satisfied where the class representative diligently participated and class counsel vigorously litigated. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both

through motion practice on the legal merits and through discovery of facts and potential damages"). Key to this factor is whether class counsel and the class representative had sufficient information to negotiate a class-wide settlement. *See Snyder*, 2018 WL 4659274 at *4. This element corresponds with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Plaintiff cooperated throughout the entirety of this matter, including fielding questions, and regularly conferring with counsel, and waging the risk of being a Class Representative. Further, the Parties engaged in litigation sufficient for them to comprehensively review and weigh the risks and probabilities of success, and calculate a range of potential damages prior to engaging in settlement discussions. Accordingly, the Class Representative and Class Counsel have adequately represented the proposed Settlement Class and Rule 23(e)(2)(A) is satisfied.

  b.  The Settlement was Reached Through Arm's-Length, Non-collusive Negotiations.

The settlement terms were negotiated at arms-length between attorneys experienced in the litigation, and settlement of class actions. Counsel for both Parties understand the unique and unsettled legal and factual issues involved in the case. BIPA litigation is an expanding and rapidly evolving area of law, and there existed multiple questions of law that remained unsettled by the courts. The Settlement was reached only after a substantial amount of litigation and information sharing, through which the Parties' counsel assessed the strengths and weaknesses of the case, culminating in settlement following lengthy settlement discussions. Through their experience, the attorneys were well positioned to evaluate the strengths and weaknesses of their clients' positions, as well as the appropriate basis upon which to settle the case. Accordingly, the Settlement was properly obtained through arm's-length negotiations and was non-collusive.

c. The Settlement Secures Positive Relief for Class Members

The Settlement provides more than adequate relief for Class Members. After all deductions are made Settlement Class Members are estimated to receive a check in the approximate net amount of $750.00. This is an excellent per-person net recovery that leaves little doubt that the benefit to the Class is quite positive. The per-person recovery substantially exceeds the amounts awarded to individuals in many previously approved BIPA class settlements. *Compare with Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) (Wilson, J.) (approving BIPA settlement of $292.98 net per person for 2,251 class members); *Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323 (Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (approving reversionary fund for 2,200 class members, which capped payments at $400 gross per member); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) (Atkins, J.) ($500 gross); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152 (Il. Cir. Ct. Cook Cnty. Feb. 14, 2019) ($115 or $40) (Loftus, J.); *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) (Cohen, J.) ($500 gross).

**B. The Proposed Settlement is Fair, Reasonable, and Adequate.**

a. Further Litigation Would be Highly Complex, Protracted, and Expensive to Address the Merits of Plaintiff's Claims and Class Certification

If the litigation had continued, it would have been complex, expensive, and protracted. Appeals that were pending at the time of negotiations were also considered. A few relevant – and potentially dispositive – issues in BIPA jurisprudence were unsettled at the outset of this litigation but have now been decided by the Illinois Supreme Court. Had the Illinois Supreme Court decided that a one-year limitations period applies to BIPA claims the vast majority of Class Members would suddenly be rendered ineligible to obtain any relief because their claims would become

time-barred. *See Tims v. Black Horse Carriers, Inc.,* 2023 IL 127801. Similarly, if the Illinois Supreme Court held that BIPA claims only accrue upon the first scan, many Class Members' claims would have become time barred. *Cothron v. White Castle Sys., Inc.,* 2023 IL 128004.

Finally, in the BIPA realm, litigation is not the only risk. Many bills were introduced to amend or repeal BIPA. Affected businesses and interested organizations have publicly opposed BIPA. The Illinois Supreme Court recognized that the potential financial impact of BIPA may impact discretionary damages and recently asked for the legislature to weigh in. *Cothron*, 2023 IL 128004, ¶ 43 (Feb. 17, 2023). *Cothron* was also subject to a petition for rehearing, that was only recently denied by the Illinois Supreme Court on July 18, 2023. In that opinion, the *Cothron* Court again asked the legislature for guidance and to "make clear its intent regarding the assessment of damages under the Act." *Id.* (rehearing denied July 18, 2023). The legislature has yet to respond.

    b. <u>Administration and Notice Procedures were Robust, and the Settlement has been Well Received by the Class Members.</u>

As described herein, class administration and notification procedures were robust and employed the best mechanisms to thoroughly identify and notify Class Members at the earliest possible juncture, providing them with as much time as possible under the circumstances to opt out or object to the settlement. The Settlement Administrator then performed multiple searches to update addresses. Of the 2,980 Class Members, 2,474 Settlement Class Members (83%) were successfully mailed notice. Ex. 2, ¶ 11. None of the Class Members opted out or objected to the settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (granting final approval of class settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'").

The lack of objectors denotes support for the settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ( "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). The fact that none of Class Members have opted-out nor filed objections to the proposed Settlement is "strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000).

Since the Class Members did not have to submit claims to participate, this means 2,474 out of 2,980 Class Members (i.e., 83%) are expected to receive direct cash payments. Claims-made class settlements typically result in less than 15% of all eligible members receiving payment. *See McLaughlin on Class Actions § 6:24* (8th ed.) ("claims-made settlements typically have a participation rate in the 10–15 percent range."); *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007) (noting that it is not unusual to have participation rates of 10 to 15% and examining examples of rates lower than 5%); *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%."). This is a notice rate with far greater success than typically achieved in class settlements and warrants final approval.

c.   The Opinion of Competent Counsel Weighs in Favor of Approval

Here, Class Counsel affirms that this settlement provides a fair value and a significant benefit to the members of the Class, which meets or exceeds the typical BIPA class settlement.

13

Class Counsel strongly endorses this Settlement. These facts weigh heavily in favor of final approval. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d. 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations. . . suggest that the settlement is fair and merits final approval").

## V.     CONCLUSION

Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement. A copy of the proposed final order is attached as Exhibit 5.

Respectfully submitted,

Dated: September 27, 2023                                    /s/ Mara Baltabols
                                                           One of Plaintiff's Attorneys

Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
docketing@fishlawfirm.com
*Attorneys for Plaintiff and Others Similarly Situated*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on September 27, 2023, which will serve a copy on all counsel of record.

/s/ Mara Baltabols